**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO.**

**SECURITIES AND EXCHANGE COMMISSION,**

     **Plaintiff,**

**v.**

**PROFILE SOLUTIONS, INC.,**
**DAN ORAN, and**
**LEONARD M. TUCKER**

     **Defendants.**

_____/

## COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Plaintiff Securities and Exchange Commission (the "SEC") alleges:

## I. INTRODUCTION

1.     This case concerns a fraudulent penny stock scheme involving a purported cannabinoid and hemp company called Profile Solutions, Inc. ("Profile" or the "Company").

2.     At the center of this fraudulent scheme are convicted felon and SEC recidivist Leonard M. Tucker and his colleague Dan Oran. Oran held the title of CEO of Profile, while Tucker worked secretly in an executive capacity at Profile.

3.     To lure investors, Oran and Tucker, directly and through Profile, told a series of material misrepresentations and omissions to the investing public.

4.     For example, Oran authorized Profile to issue press releases claiming, among other things, that Profile had obtained "preliminary approval" to grow and process medical cannabis and hemp in the Kingdom of Eswatini, a nation in Africa formerly known as Swaziland ("Eswatini").

5.     This was false. In truth, when Oran authorized and Profile issued the press releases it was illegal to grow cannabis in Eswatini – a fact the Defendants failed to disclose to investors.

6.      The Defendants made these same misrepresentations and omissions about Eswatini to the public in Profile's registration filings with the SEC.

7.      And the Defendants did not stop there.  On a registration filing with the SEC that required Profile to identify all individuals acting in a management or executive capacity, the Defendants failed to disclose that Tucker, a convicted felon, acted as an executive of Profile.

8.      The fraudulent scheme operated behind multiple veils of secrecy built of the Defendants' lies to conceal: (1) the true nature of Profile's operations in Eswatini; (2) the fact that Profile's purported business in Eswatini was a crime there; (3) that contrary to the Defendants' representations, Profile did not have third parties poised and approved to distribute Profile's cannabis products in Central and South America; and (4) that Tucker, a convicted felon and SEC recidivist, was acting in an executive or management capacity at Profile.

9.      These lies, and the scheme the Defendants employed to perpetuate them in connection with the offer, purchase, and sale of Profile penny stocks, form the basis of this action.

## II.  DEFENDANTS AND RELATED ENTITY

### A.  Defendants

10.      **Profile** is a Florida corporation with its principal office in Sunrise, Florida.  The Company was initially created as a Delaware corporation in 2006 and its original name was YaFarm Technologies, Inc.  On January 22, 2013, the Company effected a 5 for 1 stock split. In May 2014, the Company's name changed to Integrative Stem Cell Holdings, Inc. ("Integrative") after Integrative acquired the Company. On May 29, 2014, Integrative entered into a share exchange agreement pursuant to which they acquired the assets and business of Profile Solutions, Inc., a Florida corporation, and the Company's name changed to Profile Solutions, Inc.

11.      From at least 2007 until June 2019, the Company's shares were quoted on OTC Link (previously known as "Pink Sheets"), operated by OTC Markets Group, Inc.  The ticker symbol is

"PSIQ."  On October 19, 2018, Profile filed a Form S-1 registration statement with the SEC.  On March 5, 2019, Profile filed an amended Form S-1/A registration statement with the SEC to sell up to 166,517,203 shares of its securities at $0.16 per share on behalf of certain selling shareholders. Profile's registration statement has not yet gone effective.

12.     On June 18, 2019, the SEC issued an Order suspending trading in the securities of Profile for ten business days because of questions that were raised about the accuracy and adequacy of information in the marketplace relating to Profile's common stock.

13.     Since the June 2019 trading suspension, quotes for Profile's securities on OTC Link have been limited to unsolicited quoting activity.

14.     **Oran** resides in Pembroke Pines, Florida.  Oran has been the chief executive officer and president of Profile since December 2017.  Oran owns 38.3% of Profile's common stock.

15.     **Tucker** resides in Boca Raton, Florida.  Contrary to the Profile website, which identified Tucker only as a consultant, Tucker has acted as an undisclosed *de facto* executive officer of Profile since no later than October 2018, and he owned 14.5% of Profile's common stock.  Tucker is a former registered representative and was last associated in 1989 with F.D. Roberts Securities, Inc., a now defunct broker-dealer, where he was the chairman of the board.

16.     In September 1990, Tucker pled guilty to three felony counts of securities fraud, conspiracy to commit securities fraud, and violating a federal RICO statute.  *U.S. v. Leonard Tucker*, Case No. 90-132 (D. NJ Sept. 1990).  On October 14, 1993, the Court sentenced Tucker to 24 months in prison and he was released from federal prison in August 1995.

17.     On September 8, 1993, the SEC filed an enforcement action against Tucker in the Southern District of Florida, alleging that Tucker participated in a fraudulent scheme to manipulate the market prices of certain securities issued in connection with an initial public offering (IPO).  *SEC v. Tucker, et al.,* Case No. 9:93-cv-08465 (S.D. Fla.) (J. Nesbitt).  In February 1994, the District

Court for the Southern District of Florida, by Tucker's consent, permanently enjoined Tucker from violating the anti-fraud, registration, and broker-dealer books and records provisions of the federal securities laws, and ordered Tucker to disgorge $625,000 in ill-gotten gains.

18.     In January 1995, the SEC instituted administrative proceedings, made findings, and imposed remedial sanctions against Tucker, by his consent. *In the Matter of Leonard M. Tucker*, Exchange Act Release No. 34-35262 (Jan. 1995).   Pursuant to that Order, Tucker remains permanently barred from associating with any broker-dealer, investment company, and investment adviser.

### B.   Related Entity

19.     Elite Products International, Inc. ("Elite") is a Florida  Company.   Elite is a subsidiary of Profile.   On December 14, 2017, the Company entered into a Share Exchange Agreement with Elite and Elite's stockholders, issuing an aggregate total of 600,000 shares which represented approximately 85% of the Company's then-issued and outstanding common stock to acquire all of the issued and outstanding equity securities of Elite.   As part of this transaction, the Company's authorized common stock increased to 1 million shares.   Through Elite, the Company is in the business of manufacturing, marketing and selling food products, such as cookies, candies, "crystal pop," honey, multi-vitamins, topical products, and vaping liquids, containing extracts from the cannabinoid and industrial hemp plant.

### III.   JURISDICTION AND VENUE

20.     The Court has jurisdiction over this action pursuant to Sections 20(b), 20(d), and 22(a) of the Securities Act, 15 U.S.C. §§ 77t(b), 77t(d), and 77v(a); and Sections 21(d), 21(e), and Section 27 of the Exchange Act, 15 U.S.C. §§ 78u(d), 78u(e), and 78aa.   This Court has personal jurisdiction over the Defendants, and venue is proper in the Southern District of Florida, because many of the Defendants' acts and transactions constituting violations of the Securities Act and the

Exchange Act occurred in the Southern District of Florida.  During the time of the violations at issue in this case, Profile's principal office was located in the Southern District of Florida, Profile is a Florida corporation, and Oran and Tucker operated Profile out of the Southern District of Florida from no later than October 2018 until at least May 2019.  Oran, the chief executive officer and president of Profile since December 2017, resides in the Southern District of Florida.  Tucker, who acted as a *de facto* executive officer of Profile since no later than October 2018, resides in the Southern District of Florida.

21.     In connection with the conduct alleged in this Complaint, the Defendants, directly and indirectly, singly or in concert with others, have made use of the means or instrumentalities of interstate commerce, the means or instruments of transportation and communication in interstate commerce, and the mails.

## IV.  <u>THE FRAUDULENT SCHEME</u>

22.     According to its SEC filings, Profile, through its subsidiary Elite, is in the business of manufacturing, marketing and selling food products, such as cookies, candies, "crystal pop," honey, multi-vitamins, topical products, and vaping liquids, containing extracts from the cannabinoid and industrial hemp plant.

23.     From at least 2007 until June 2019, Profile's shares were quoted on OTC Link and following a trading suspension in July 2019, Profile's shares on OTC Link have been limited to unsolicited quoting activity only.

24.     From 2007 through present, the Profile shares have been "penny stocks" and have qualified as such because, among other things, the securities were not an "NMS stock," as defined in 17 CFR 242.600(b)(55); (2) traded below five dollars per share during the relevant period; (3) Profile had net tangible assets and average revenue below the thresholds of Rules 3a51-1(g)(1) and (2) under

the Exchange Act; and (4) the securities did not meet any of the other exceptions from the definition of "penny stock" contained in Rule 3a51-1 under the Exchange Act.

25.     From no later than October 2018 until at least March 2019, Oran and Tucker, directly and through Profile, engaged in promotional activities through which they made a series of material misrepresentations and omissions in press releases, on social media, on the Profile website, and in SEC filings.

26.     The Defendants' promotional activities materially impacted the market for Profile's stock.

**A.  Materially False and Misleading Press Releases and Social Media Posts**

27.     From no later than October 2018 until at least March 2019, Oran and Tucker participated in the issuance of at least six false and misleading press releases about Profile that materially impacted the market for Profile's stock (collectively, the "Press Releases").

28.     Tucker drafted the Press Releases, and Oran reviewed them and gave final approval before they were issued to the public.

29.     The Press Releases included quotes attributed to Oran that Tucker authored.

30.     During this time period, Profile, Oran, and Tucker made material misstatements or omissions in at least six Press Releases issued by the Company.

*1.  Materially False and Misleading Press Releases Regarding a Purported Deal in Eswatini*

31.     From no later than October 10, 2018 until at least March 6, 2019, the Defendants made misrepresentations and omissions about Profile and the Eswatini Ministry of Economic Planning and Development (the "Eswatini Ministry") in at least four separate press releases.

32.     On October 10, 2018, Profile issued a press release, which Tucker authored and Oran approved for distribution to the investing public (the "October 2018 Press Release).

33.     The October 2018 Press Release:

a.      Announced that the Company had received "preliminary approval" from the Eswatini Ministry to establish an "exclusive growing farm and processing plant for medical cannabis and hemp" in Eswatini;

b.      Touted a purported agreement with Eswatini that would grant Profile "exclusive license and permits" for ten years to: (1) operate an advanced hemp and medical cannabis growing and manufacturing facility; (2) export hemp and medical cannabis worldwide; (3) operate a medical cannabis research and development laboratory; and (4) create a training facility to create jobs for Eswatini citizens;

c.      Claimed that Eswatini would provide Profile with land in exchange for Profile's investment of up to $5 million in the venture; and

d.      Included a quote attributed to Oran stating that "this opportunity could generate $20 to $30 million in annual revenues" and that "we anticipate our first flowers to be ready to be sold within 12 months."

34.      The Defendants lacked any reasonable basis for making these representations in the October 2018 Press Release.

35.      The representations in the October 2018 Press Release were materially false and misleading.

36.      Contrary to the representation in the October 2018 Press Release that Profile had obtained "preliminary approval" to grow and cultivate cannabis in Eswatini, in truth Profile had received no such preliminary approval.

37.      In truth, when the Defendants issued the October 2018 Press Release, the Defendants had received nothing more than a September 3, 2018 letter from Eswatini's Ministry stating "We refer to your letter dated 28 March 2018.  We thank you for your interest to invest in [Eswatini] in this new and innovative field of business" (the "Letter").

7

38.     In the Letter, the Eswatini Ministry explicitly told the Defendants that the Letter "represents only an initial indication of [Eswatini's] interest to engage with [Profile] with respect to the new proposed operation."

39.     In the Letter, the Eswatini Ministry made no mention of any of the license or permit terms the Defendants detailed in Profile's October 2018 Press Release.  The Letter is bereft of any reference to an exclusive license or permit, let alone one for ten years, to do anything, including but not limited to, an advanced hemp and medical cannabis growing and manufacturing facility, exporting hemp and medical cannabis worldwide, operating a medical cannabis research and development laboratory, or creating a training facility to create jobs for Eswatini citizens.

40.     Accordingly, the representations in the October 2018 Press Release were false and misleading.

41.     However, the following month, the Defendants repeated the same false and misleading promotion of Profile to the investing public.

42.     On November 13, 2018, Oran and Tucker caused Profile to issue another press release authored by Tucker and approved for distribution by Oran (the "November 2018 Press Release").

43.     In the November 2018 Press Release, the Defendants again touted Eswatini's "preliminary approval" for Profile to establish a growing farm and processing plant for medical cannabis and hemp in Eswatini.

44.     When the Defendants issued the November 2018 Press Release for distribution to the investing public, Eswatini had not provided any such preliminary approval.  Accordingly, the November 13, 2018 Press Release was false.

45.     The Defendants continued making the same misrepresentations about Profile and Eswatini two months later, in a press release published January 16, 2019 that Tucker authored and Oran approved for distribution (the "January 2019 Press Release").

46.     Less than two months later, on March 6, 2019, the Defendants issued a press release on behalf of Profile announcing, among other things, that Profile's application to grow and process cannabis in Eswatini was "near[ing] approval." (the "March 2019 Press Release").

47.     The March 2019 Press Release was false and misleading. Far from being near approval, when the March 2019 Press Release was issued the Eswatini Ministry had sent nothing more than the September 3, 2018 Letter – explicitly telling the Defendants that the Ministry was expressing nothing more than an "initial indication of interest."

48.     The October 2018, November 2018, January 2019, and March 2019 Press Releases were also materially misleading for another reason.

49.     In 2018 and 2019, cannabis was illegal in Eswatini.

50.     In the October 2018, November 2018, January 2019, and March 2019 Press Releases, the Defendants touted Profile's purported cannabis business deals with Eswatini, but failed to disclose that cannabis was in fact illegal in Eswatini.

### 2. *Materially False and Misleading Tweets Regarding a Purported Deal in Eswatini*

51.     Tucker chose to retain the services of an individual with the initials "A.B." in Canada to provide graphics for social media posts.  Tucker sent A.B. press releases, A.B. created graphics, and then A.B. emailed the graphics to Tucker for use in Profile's social media posts.  Tucker then caused Profile to post the social media posts on the technology application called Twitter ("tweets.").

52.     In October 2018, Tucker drafted and/or authorized for publication at least three tweet messages that were published to the public on Profile's Twitter account, making materially false and misleading statements concerning the supposed Eswatini deal (the "October 2018 Twitter Posts").

53.     In a message Tucker drafted and caused to be posted to Profile's public Twitter page on October 10, 2018, Profile announced that Profile "will now be setting up a major Medical Cannabis growing and processing operation and will be selling WORLDWIDE!"

54.     Specifically, the tweet was as follows:



55.     Similarly, on October 15, 2018, Tucker caused the following tweet to be published on Profile's Twitter page available to the public:



56.     On October 24, 2018, Tucker caused the following tweet to be posted on Profile's

Twitter page available to the public:



57.     In a message Tucker drafted and caused to be posted to Profile's public Twitter page

on October 26, 2018, Profile announced that Eswatini was "set to grant [the Company] the required

licenses and permits to research, grow [and] distribute worldwide."

58.     The October 2018 Twitter Posts were false and misleading.

59.     In the October 2018 Twitter Posts, Tucker, on behalf of Profile, touted the Eswatini

deal.  However, when Tucker published the October 2018 Twitter Posts on Profile's social media

page, Eswatini had only sent the Defendants an "initial indication of interest" - and nothing more.

When Tucker posted the October 2018 Twitter Posts touting Profile's expansion of its cannabis

business to Eswatini, cannabis was illegal in Eswatini – a material fact Tucker knew and failed to disclose.

### 3.  Materially False and Misleading Press Releases Regarding an International Distributor

60.     In a December 4, 2018 press release drafted by Tucker and approved for distribution by Oran, Profile announced that it had granted exclusive distribution rights to sell its cannabis products in Mexico and Argentina to a company (which company is identified in this Complaint as having the initials "RCS") (the "December 2018 Press Release) "with a first year minimum guarantee of $500,000 and 20% growth per year thereafter."

61.     The December 2018 Press Release included a quote from Oran explaining that with medical cannabis now legal in Mexico and Argentina, there is "tremendous opportunity for growth" and that RCS "will best monetize the opportunity" for Profile.

62.     The December 2018 Press Release omitted material information necessary to make the representations made in it not misleading.  Specifically, the release failed to mention that RCS was not licensed, or otherwise legally able, to distribute Profile's cannabis products in Mexico and Argentina.

63.     A few months later, on March 21, 2019, Profile issued another press release regarding RCS, announcing that it had now granted that company exclusive distribution rights to sell Profile's products in Paraguay, Chile and Brazil, "with a first year minimum guarantee of $500,000 and 20% growth per year thereafter." (March 2019 Press Release").

64.     In a quote contained in the March 2019 Press Release, Oran stated that Profile granted the additional distribution rights "[b]ased upon the success and commitment being made in Mexico and Argentina by RCS," and that the Company expects the relationship with RCS to "continue to flourish to increasing revenues."

65.     The March 2019 Press Release is false and misleading for at least three reasons.

66.     First, unlike the RCS agreement for Mexico and Argentina, the distribution agreement between Profile and RCS for Paraguay, Chile and Brazil did not provide for a "minimum guarantee of $500,000 and 20% growth per year thereafter."

67.     Second, Oran's quote claiming that Profile granted the additional distribution rights based on RCS's success in Mexico and Argentina is false and misleading.

68.     RCS never obtained licenses to distribute Profile's cannabis products in these two countries and was therefore unable legally to make sales in those nations.

69.     By the time Profile issued the March 2019 Press Release, RCS had only ordered about $7,200 in sample products from Profile over the course of several months and never sold any of it in Mexico and Argentina.  Thus, contrary to the press release, RCS had no success selling Profile's products in those countries.

70.     Neither Oran nor Tucker ever contacted RCS to find out if RCS company was licensed to sell cannabis products in Mexico and Argentina.  Nor did Oran and Tucker have any reasonable basis to claim that RCS had been successful in those markets.

71.     At all relevant times, Tucker knew RCS needed to file documents with both the Mexican and Argentinian authorities in order to obtain licenses to sell cannabis products and had not yet done so.

72.     Third, the representation in the March 2019 Press Release that there was a "$500,000 minimum guarantee" was patently false.  There was no such guarantee.

### B.  The False and Misleading Press Releases and Social Media Posts Had a Material Impact on Profile's Stock Price

73.     The false and misleading Press Releases had a material impact on Profile's stock price.

74.     Prior to the Defendants issuing the Press Releases, Profile's stock price hovered around an average of $0.15 per share.

75. However, during the five-month period starting from when Profile issued the October 2018 Press Release until Profile issued the March 2019 Press Release, Profile's stock price increased by more than 75 percent, rising steadily and continuously to close at about $0.26 a share on March 21, 2019.

76. Moreover, during this same five-month period, Profile's share price closed as high as $0.60.

77. Throughout this five-month period, Profile met the definition of a penny stock established by Section 3(a)(51) and Rule 3a51-1 of the Exchange Act because it did not list net tangible assets totaling more than $5 million in its SEC filings.

### C. Profile's Materially False and Misleading Registration Statements

78. Through Oran and Tucker, Profile made false and misleading statements in filings with the SEC regarding Tucker's role at Profile and Profile's Eswatini deal.

### 1. Material Omissions Regarding Tucker's Role at Profile

79. Profile, through Oran and Tucker, made false and misleading statements in Profile's October 19, 2018 Form S-1 registration statement ("Registration Statement") and March 5, 2019 Form S-1/A amended registration statement ("Amended Statement") (collectively, the "Statements"). Oran signed the registration statements as the chief executive officer of Profile.

80. Tucker participated in drafting the Statements, including providing information to the drafting attorney, commenting on drafts, providing information for revisions and review, and Oran reviewed them and gave final approval before they were filed with the SEC.

81. The Statements both failed to disclose that Tucker was a *de facto* executive officer of Profile.

82. In truth, Tucker, a convicted felon, acted as an executive officer of Profile beginning no later than October 2018 and ending no earlier than May 2019, during which time:

      a.    Tucker had significant influence over Profile's affairs and played a key role in Profile's operations.  For example, Tucker decided when to issue press releases and what quotes to include in them.  He acted as Profile's liaison with the Company's accountants and attorneys in preparing and finalizing the information contained in the registration statements.  Tucker dealt with the Company's stock transfer agent.  Oran heavily relied on Tucker for nearly all aspects of running Profile, as Oran did not have any prior experience with running a public company.

      b.    Tucker was actively involved in drafting and editing portions of the Statements on behalf of Profile and Tucker provided data that went into the filings, including information about Eswatini and RCS.

      c.    Tucker acted on behalf of Profile to serve as the liaison with Profile's accountants and attorneys in preparing and finalizing the information contained in the Statements.

      d.    Tucker acted on behalf of Profile to serve as the liaison with Profile's stock transfer agent.

      e.    Tucker had the authority to post information on behalf of Profile to the OTC Market's website.

      f.    Tucker drafted Profile agreements, such as the RCS distribution agreements, and met with Profile's business partners.

      g.    Tucker operated Profile's Twitter social media account.

      h.    Tucker chose the individual responsible for handling Profile's "investor awareness services."

83.    Although Oran made the final decisions for Profile and was the signatory on Profile's financial accounts, Tucker had a central, executive-like role at the Company.

84.     As Oran has admitted, Tucker served as Oran's "right hand," Tucker did "everything" for Profile, and Tucker worked with Oran on a daily basis in connection with consulting and management matters for Profile.

### 2. Materially False and Misleading Representations About The Eswatini Deal

85.     Profile's Amended Statement also included the same information and repeated the false claims made in the October 10, 2018 Press Release regarding the purported Eswatini deal.

86.     Like the Press Releases, the Amended Statement falsely misrepresented that Profile had obtained preliminary approval to grow and process medical cannabis and hemp in Eswatini and omitted to disclose that it was illegal to grow cannabis in that country.

## V.  CLAIMS FOR RELIEF

### COUNT I

### Fraud in Violation of Section 10(b) and Rule 10b-5(a) of the Exchange Act

#### Against all Defendants

87.     The SEC repeats and realleges paragraphs 1 through 86 of this Complaint.

88.     Oran, Tucker, and Profile, beginning no later than October 2018 and ending no earlier than May 2019, directly or indirectly, by use of the means and instrumentalities of interstate commerce, or of the mails, in connection with the purchase or sale of securities, knowingly or recklessly, employed devices, schemes or artifices to defraud in connection with the purchase or sale of securities.

89.     By reason of the foregoing, Oran, Tucker, and Profile, directly or indirectly violated, and, unless restrained and enjoined, are reasonably likely to continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Exchange Act Rule 10b-5(a) [17 C.F.R. § 240.10b-5(a)].

## COUNT II

### In the Alternative,
### Aiding and Abetting Violation of Section 10(b) and Rule 10b-5(a) of the Exchange Act

### Against Tucker

90.　　The SEC repeats and realleges paragraphs 1 through 86 of this Complaint.

91.　　Oran and Profile, beginning no later than October 2018 and ending no earlier than May 2019, directly or indirectly, by use of the means and instrumentalities of interstate commerce, or of the mails, in connection with the purchase or sale of securities, knowingly or recklessly, employed devices, schemes or artifices to defraud in connection with the purchase or sale of securities.

92.　　Tucker knowingly or recklessly provided substantial assistance to Profile and Oran in their violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5(a) [17 CFR § 240.10b-5(a)] thereunder.

93.　　By reason of the foregoing, Tucker, directly or indirectly aided and abetted violations of and, unless enjoined, is reasonably likely to continue to aid and abet violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5(a) [17 CFR § 240.10b5(a)] thereunder.

## COUNT III

### Fraud in Violation of Section 10(b) and Rule 10b-5(b) of the Exchange Act

### Against all Defendants

94.　　The SEC repeats and realleges paragraphs 1 through 86 of this Complaint.

95.　　Oran, Tucker, and Profile, beginning no later than October 2018 and ending no earlier than May 2019, directly or indirectly, by use of the means and instrumentalities of interstate commerce, or of the mails, in connection with the purchase or sale of securities, knowingly or recklessly made untrue statements of material facts or omitted to state material facts in order to make the statements made, in the light of the circumstances in which they were made, not misleading.

17

96.     By reason of the foregoing, Oran, Tucker, and Profile, directly or indirectly violated, and, unless restrained and enjoined, are reasonably likely to continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Exchange Act Rule 10b-5(b) [17 C.F.R. § 240.10b-5(b)].

### COUNT IV

**In the Alternative,**
**Aiding and Abetting Violation of Section 10(b) and Rule 10b-5(b) of the Exchange Act**

**Against Tucker**

97.     The SEC repeats and realleges paragraphs 1 through 86 of this Complaint.

98.     Oran and Profile, beginning no later than October 2018 and ending no earlier than May 2019, directly or indirectly, by use of the means and instrumentalities of interstate commerce, or of the mails, in connection with the purchase or sale of securities, knowingly or recklessly made untrue statements of material facts or omitted to state material facts in order to make the statements made, in the light of the circumstances in which they were made, not misleading.

99.     Tucker knowingly or recklessly provided substantial assistance to Profile and Oran in their violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5(b) [17 CFR § 240.10b-5(b)] thereunder.

100.    By reason of the foregoing, Tucker, directly or indirectly aided and abetted violations of and, unless enjoined, is reasonably likely to continue to aid and abet violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5(b) [17 CFR § 240.10b5(b)] thereunder.

### COUNT V

**Fraud in Violation of Section 10(b) and Rule 10b-5(c) of the Exchange Act**

**Against all Defendants**

101.    The SEC repeats and realleges paragraphs 1 through 86 of this Complaint.

102.    Oran, Tucker, and Profile, beginning no later than October 2018 and ending no earlier than May 2019, directly or indirectly, by use of the means and instrumentalities of interstate

commerce, or of the mails, in connection with the purchase or sale of securities, knowingly or recklessly engaged in acts, practices, and courses of business which have operated, are now operating, and will operate as a fraud upon the purchasers of such securities.

103.     By reason of the foregoing, Oran, Tucker, and Profile, directly or indirectly violated, and, unless restrained and enjoined, are reasonably likely to continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Exchange Act Rule 10b-5(c) [17 C.F.R. § 240.10b-5(c)].

## COUNT VI

### In the Alternative,
### Aiding and Abetting Violations of Section 10(b) and Rule 10b-5(c) of the Exchange Act

### Against Tucker

104.     The Commission realleges Paragraphs 1 through 86 and incorporates them by reference herein.

105.     Oran and Profile, beginning no later than October 2018 and ending no earlier than May 2019, directly or indirectly, by use of the means and instrumentalities of interstate commerce, or of the mails, in connection with the purchase or sale of securities, knowingly or recklessly engaged in acts, practices, and courses of business which have operated, are now operating, and will operate as a fraud upon the purchasers of such securities.

106.     Tucker knowingly or recklessly provided substantial assistance to Profile and Oran in their violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5(c) [17 CFR § 240.10b-5(c)] thereunder.

107.     By reason of the foregoing, Tucker, directly or indirectly aided and abetted violations of and, unless enjoined, is reasonably likely to continue to aid and abet violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5(c) [17 CFR § 240.10b5(c)] thereunder.

## COUNT VII

### Fraud in the Offer or Sale of Securities in
### Violation of Section 17(a)(1) of the Securities Act

#### Against All Defendants

108.     The SEC repeats and realleges paragraphs 1 through 86 of this Complaint.

109.     Oran, Tucker, and Profile, beginning no later than October 2018 and ending no earlier than May 2019, directly or indirectly, by use of the means and instrumentalities of interstate commerce, or of the mails, in connection with the offer or sale of securities, knowingly or recklessly employed devices, schemes or artifices to defraud.

110.     By reason of the foregoing, these Defendants, directly or indirectly violated, and, unless restrained and enjoined, are reasonably likely to continue to violate, Section 17(a)(1) of the Securities Act [15 U.S.C. § 77q(a)(1)].

## COUNT VIII

### Fraud in the Offer or Sale of Securities in
### Violation of Section 17(a)(3) of the Securities Act

#### Against All Defendants

111.     The SEC repeats and realleges paragraphs 1 through 86 of this Complaint.

112.     Oran, Tucker, and Profile, beginning no later than October 2018 and ending no earlier than May 2019, directly or indirectly, by use of the means and instrumentalities of interstate commerce, or of the mails, in connection with the offer or sale of securities, negligently engaged in transactions, practices, or courses of business which operated or would have operated as a fraud or deceit upon the purchasers..

113.     By reason of the foregoing, Oran, Tucker, and Profile, directly or indirectly violated, and, unless restrained and enjoined, are reasonably likely to continue to violate, Section 17(a)(3) of the Securities Act [15 U.S.C. § 77q(a)(3)].

## VI. <u>RELIEF REQUESTED</u>

**WHEREFORE**, the SEC respectfully requests that the Court find that Defendants committed the violations alleged and:

### A. <u>Permanent Injunctions</u>

Issue a Permanent Injunction, restraining and enjoining Profile, Tucker, Oran, their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, and each of them, from violating Sections 17(a)(1) and (3) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder; and in the alternative as to the Exchange Act violations against Tucker, restraining and enjoining Tucker, his officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, and each of them, from aiding and abetting violations of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.

Additionally, given Tucker's past recidivism, issue a Permanent Injunction restraining and enjoining Tucker from, directly or indirectly, including through any entity he owns or controls: (1) participating in the issuance, offer, purchase or sale of any securities except for transactions in his own personal brokerage account; and (2) participating in the management, supervision of, or otherwise exercising control over, any commercial enterprise or project that issues, purchases or sells securities.

### B. <u>Penalties</u>

Issue an Order directing all Defendants to pay civil money penalties pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), and Section 21(d) of the Exchange Act, 15 U.S.C. § 78u(d).

### C. <u>Officer and Director Bar</u>

Issue an Order barring Oran and Tucker from serving as an officer or director of any public company pursuant to Section 21(d) of the Exchange Act and Section 305(b)(5) of the Sarbanes-Oxley Act.

### D.  **Penny Stock Bar**

Issue and Order prohibiting Oran and Tucker from participating in any offering of a penny stock, including engaging in activities with a broker, dealer, or issuer for purposes of issuing, trading, or inducing or attempting to induce the purchase or sale of any penny stock, under Exchange Act Section 21(d)(6) [15 U.S.C. § 78u(d)(6)];

### E.  **Further Relief**

Grant such other and further relief as may be necessary and appropriate.

### F.  **Retention of Jurisdiction**

Further, the SEC respectfully requests that the Court retain jurisdiction over this action in order to implement and carry out the terms of all orders and decrees that it may enter, or to entertain any suitable application or motion by the SEC for additional relief within the jurisdiction of this Court.

### **DEMAND FOR JURY TRIAL**

The Commission hereby demands a jury trial in this case on all issues so triable.

September 9, 2022                    Respectfully submitted,


By:       s/Amie Riggle Berlin_____
          Amie Riggle Berlin, Esq.
          Senior Trial Counsel
          Florida Bar No. 630020
          Direct Dial: (305) 982-6322
          Direct email: berlina@sec.gov

          Attorney for Plaintiff
          **SECURITIES AND EXCHANGE COMMISSION**
          801 Brickell Avenue, Suite 1950
          Miami, Florida  33131
          Telephone: (305) 982-6300
          Facsimile:   (305) 536-4154